# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. L. FUGATE-JORDAN, Minor.

UNPUBLISHED
July 14, 2016

No. 330355
Oakland Circuit Court
Family Division
LC No. 2012-798330-NA

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Respondent, D. Jordan, appeals as of right the trial court's order terminating his parental rights to the minor child under MCL 712A.19b(3)(a)(*ii*) and (c)(*i*). We affirm.

Respondent argues that the trial court clearly erred in finding that it was in the minor child's best interests to terminate his parental rights. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews the court's determination regarding the child's best interests for clear error. *In re Olive/Metts*, 297 Mich App at 40. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* at 41-42 (internal citations omitted). The fact that a child is placed with a relative weighs against termination. *Id.* at 43. Generally, it is in a child's best interests to be kept with his or her siblings. *Id.* at 42.

In this case, the trial court found that respondent's visitation was sporadic and minimal. Respondent admitted that he would not be able to care for the child for another six months, which would result in the child being in care for 44 months. Further, the trial court found that based on the testimony of Dr. Patricia Wallace, who performed a psychological evaluation of respondent, it would be even longer than six months before respondent would be able to care for the child. Dr. Wallace testified that she could not say when respondent would be ready to care for the child, but her report indicated that he would need "intensive parenting training and supervised interactions with the child before reunification [could] be seriously considered." The trial court recognized that the child had a bond with respondent, but believed that respondent's

-1-

bond with the child was not of a parent, but of a "fun relative" who visited on a regular basis. This was demonstrated by respondent's own testimony regarding how he would play with the child and tell jokes when he was with her. While respondent completed parenting classes, there was evidence that he could benefit from additional classes. Although, as respondent contends, there was no specific evidence presented regarding the child's need for permanency, stability, and finality, the trial court did not clearly err in finding that the child would not have structure in respondent's care. Respondent lacked steady employment, sufficient income, and appropriate housing. Although Dr. Wallace testified that a change in the child's placement might not be radical for the child depending on how it was handled, placement of the child with the maternal grandparents, who had cared for the child for approximately three years and who desired to adopt her, would provide the child with stability and permanency.

Further, while respondent complied with most aspects of his case service plan and there was no evidence of domestic violence, his sporadic visitation and inability to care for the child outweighed those considerations. In addition, defendant concedes that the advantages of the grandparents' home, the child's well-being with the grandparents, the fact that the grandparents were willing to adopt the child, and the fact that the child would be with her siblings weighed in favor of termination. Finally, the trial court expressly considered the fact that the child was placed with relatives, and contrary to respondent's assertion, it did not find that this factor weighed in favor of termination. In fact, it stated "I do take into account the relative placement, I take into account the fact that [the child and respondent] are bonded. *And even given those two factors*, I feel it's a clear decision that [respondent's] parental rights should be terminated[.]" (Emphasis added.) The trial court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra